UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MAKAILYA U. RICE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:14-cv-01052-TWP-TAB |
| ) | |
| CAROLYN W. COLVIN, Acting Commissioner ) | |
| of the Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Makailya Rice ("Rice") requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying her applications for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), and Supplemental Security Income ("SSI") under Title XVI of the Act.[1] For the reasons stated below, the Court **REMANDS** the decision of the Commissioner for further consideration.

### I.  BACKGROUND

**A.  Procedural History**

On April 3, 2009, Rice protectively filed an application for childhood SSI, alleging a disability onset date of January 1, 2006, due to depression, anxiety, bi-polar disorder, oppositional defiance disorder, and obesity. At the time of her application, Rice was a minor, so her application was filed by her mother, Tamika Dawn. Her claim was initially denied on September 4, 2009, and again on reconsideration on December 9, 2009. Rice filed a written request for a hearing on

---

[1] In general, the legal standards applied are the same regardless of whether a claimant seeks Disability Insurance Benefits or Supplemental Security Income, therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates.

December 23, 2009. On January 18, 2011, a hearing was held before Administrative Law Judge Albert J. Velasquez (the "ALJ"). She was represented by counsel and appeared with her mother. Robert Barber, an impartial vocational expert, also appeared and testified at the hearing. On February 11, 2011, the ALJ denied Rice's application for SSI. Following this decision, Rice requested review by the Appeals Council on February 24, 2011. The Appeals Council denied Rice's request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. On November 15, 2011, Rice filed a complaint for judicial review of the ALJ's decision. Then on August 3, 2012, the Commissioner filed a motion to remand under Sentence Four of 42 U.S.C. § 405(g) for additional administrative proceedings. On September 19, 2012, the Court granted the Commissioner's motion to remand, entered judgment, and remanded the case to the ALJ for further proceedings.

While the appeals process was pending, on May 18, 2012, Rice filed an application for child disability benefits under Title II of the Act under her father's wage record. On April 29, 2013, another administrative hearing was held by the ALJ to consider the applications for SSI and child disability benefits. Rice again appeared for the hearing with her mother and was represented by the same counsel. On July 31, 2013, the ALJ again denied her applications. Rice requested review by the Appeals Council and on April 24, 2014, the Appeals Council denied her request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. On June 25, 2014, Rice filed this action for judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

**B.     Factual Background**

Rice was born on January 6, 1993 and at the time of her alleged disability onset date she 12 years old. She was 16 years old when she filed her application for SSI, and 18 years old at the

time of the ALJ's initial decision. Rice was 19 years old when she filed her application for childhood DIB. She completed her high school education and has attended Indiana State University ("ISU"), studying information technology. Rice has engaged in limited work activity as a camp counselor and a babysitter, and she worked at a daycare for a brief period.

On March 28, 2006, Rice was evaluated for treatment at Gallahue Mental Health Services ("Gallahue"). At that time, she was a seventh grader at Belzer Middle School and she had recently turned 13 years old. Rice was obese and did not get along well with others, especially her family. She was very angry and frustrated. She had mood swings, was irritable, and was not sleeping well. Two weeks earlier, she had suicidal thoughts and tried to jump off a balcony. When she was angry, she would cut herself. She picked at moles and scabs on her skin, causing them to bleed and leave scars. Sometimes she had visual hallucinations of colored, floating dots. After her evaluation, Rice was diagnosed with anxiety, depression, and oppositional defiant disorder. Her treatment plan consisted of frequent counseling with therapists and counselors as well as prescribed medications.

Because Rice had problems with attendance, insubordination with teachers, and physically fighting with other students at school, the principal at Belzer Middle School required her to attend an anger management camp during the summer between her seventh and eighth grades to be able to return to the school. She attended an anger management camp that summer.

Rice continued receiving treatment at Gallahue in 2006 through the middle of 2010. There were periods when she met with a therapist or counselor once a week and other periods when she would meet with them a couple of times each month. The treatment notes recorded problems with anxiety, depression, oppositional defiant disorder, defiant behavior, and physical aggression. Many of the treatment notes indicated that Rice's memory, cognition, and intelligence were within

normal limits.  During her years of treatment at Gallahue, there were periods of improvement in her relationship and actions toward her family, improvement in her grades, and improvement in social interactions.  There were notes that Rice was receiving A and B grades in some of her classes.  A treatment note indicated that Rice was elected the sophomore class president.  There were periods when her anxiety and depression were decreasing and her defiant behaviors improved.  However, there also were periods during her treatment at Gallahue when she was noncompliant in taking her medications, her anxiety flared up, and her depression worsened.  She reported incidents of physical fights with her siblings and insubordination at school and with her mother.  She was assessed global assessment of functioning scores in the mid-forties and mid-fifties during her treatment at Gallahue.  The treatment notes from Gallahue indicated Rice had problems with violence, self-mutilation, and suicidal thoughts.  During this period of treatment at Gallahue, Rice also received counseling from a school counselor on a weekly basis.  Her treatment at Gallahue ended in June 2010 after her family moved to a new residence.  Thereafter, she began receiving treatment at Adult and Child Mental Health Services in April 2010.

While still receiving mental health treatment at Gallahue, Rice underwent a psychological evaluation by Greg V. Lynch, Ph.D. ("Dr. Lynch").  This evaluation was conducted in February 2007 when Rice was 14 years old.  In his evaluation report, Dr. Lynch noted that Rice received above average grades at school and that she had some issues at school the previous year because of fighting and attendance problems.  She reported being able to eat, dress, and bathe herself.  She was able to tell time, use money, use the telephone, play video and board games, and read.  Dr. Lynch noted that Rice's appearance was neat, clean, and appropriate. Her attention, concentration, and memory were within normal limits.  She had appropriate affect and a good mood.  Her

intelligence was average and judgment fair. Dr. Lynch's diagnostic impressions were depression, anxiety, and a global assessment of functioning score of 58 (Filing No. 12-9 at 12–16).

On August 31, 2009, Rice, then age 16, underwent another psychological evaluation. This time the evaluation was conducted by Suzanne Leiphart, Ph.D. ("Dr. Leiphart"). Rice reported bipolar disorder and that she was prescribed medications. She reported that she was inconsistently taking various medications, most of which were helpful. Rice reported getting into trouble at home and fighting with her brother. She talked about attending a program at Indiana University that summer. She explained that she had a boyfriend and liked going to parties. She reported drinking alcohol on occasion. She also reported feelings of low self-esteem, hopelessness, and helplessness. Dr. Leiphart indicated that Rice's insight and judgment were poor at times and that her concentration also was poor at times. Dr. Leiphart diagnosed Rice with bipolar disorder and a learning disorder and assigned a global assessment of functioning score of 53 (Filing No. 12-12 at 53–55).

Rice began receiving mental health treatment at Adult and Child Mental Health Services in April 2010. She received treatment there until August 2011 when she left for college. Her treatment notes from Adult and Child Mental Health Services indicated diagnoses of depression and anxiety, and it appears that there was no diagnosis of bipolar disorder. However, Rice was prescribed medications used for depression, anxiety, and bipolar disorder. Her treatment notes recorded that she was doing fine when she was consistently taking her medications, and that when she stopped taking her medications, her depression and anxiety increased. She met with counselors and therapists at Adult and Child Mental Health Services about once or twice a month. She was assigned global assessment of functioning scores of 45 and 50.

While she was attending ISU, Rice lived in a dormitory away from home and apart from her family. She lived with a roommate, and she served as president of a student organization. From August 2011 through April 2013, Rice met with school therapists, counselors, and doctors at ISU. These mental health treatment sessions occurred weekly and sometimes more than once in a week. There were periods when the treatment sessions occurred every other week. One doctor noted that Rice reported having a diagnosis of bipolar disorder. He reported Rice's hypomania, but it did not last long and was not constant or frequent.

While still a college student at ISU but at home during the summer break in 2012, Rice again received mental health treatment at Gallahue from May through August 2012. Her treatment notes discuss her bipolar disorder as the primary diagnosis and note her most recent episode as moderate manic. Rice's racing thoughts, not sleeping for one to two days, and short periods of elation were indications of her mania. The treatment notes also discussed other symptoms of mania. It was noted that her bipolar symptoms caused marked impairment in her functioning (Filing No. 13-8 at 31–32). She was assigned global assessment of functioning scores of 50 and 55. The treatment notes also indicated that Rice had poor judgment, poor impulse control, and poor insight. One of the objectives of her treatment at Gallahue was that she would have no manic episodes for six consecutive months (Filing No. 13-8 at 27).

On August 7, 2012, Rice underwent another psychological evaluation by Dr. Leiphart. She reported seeing a school therapist while at ISU about two to three times a week. She also reported feelings of low self-esteem, hopelessness, and helplessness. She was anxious and depressed with angry outbursts and fighting. She felt her medications were not working. She had occasional racing thoughts and poor concentration. Dr. Leiphart diagnosed Rice with bipolar disorder,

anxiety, and a learning disorder, and noted a global assessment of functioning score of 53 (Filing No. 13-8 at 11–14).

## II.   DISABILITY AND STANDARD OF REVIEW

Under the Act, a claimant may be entitled to DIB or SSI only after he establishes that he is disabled.  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled.  At step one, if the claimant is engaged in substantial gainful activity, he is not disabled despite his medical condition and other factors.  20 C.F.R. § 416.920(a)(4)(i).  At step two, if the claimant does not have a "severe" impairment that meets the durational requirement, he is not disabled.  20 C.F.R. § 416.920(a)(4)(ii).  A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve month duration requirement; if so, the claimant is deemed disabled.  20 C.F.R. § 416.920(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments on the Listing of Impairments, then his residual functional capacity will be assessed and used for the

fourth and fifth steps.  Residual functional capacity ("RFC") is the "maximum that a claimant can still do despite his mental and physical limitations."  *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); SSR 96-8p).  At step four, if the claimant is able to perform his past relevant work, he is not disabled.  20 C.F.R. § 416.920(a)(4)(iv).  At the fifth and final step, it must be determined whether the claimant can perform any other work in the relevant economy, given his RFC and considering his age, education, and past work experience.  20 C.F.R. § 404.1520(a)(4)(v).  The claimant is not disabled if he can perform any other work in the relevant economy.

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

In the case of claimants under the age of eighteen, a claimant must have a disability as defined by 20 C.F.R. § 416.924.  The Act defines child disability as a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). In determining whether a minor claimant is disabled, the Commissioner employs a three-step sequential analysis:  (1) if the claimant is engaged in work that qualifies as substantial gainful activity, he is not disabled regardless of his medical condition, age, education, or work experience; (2) if the claimant does not have a medically determinable severe impairment or combination of impairments, he is not disabled; and (3) if the claimant does not have an impairment that meets, medically equals, or functionally equals a Listing or does not

meet the twelve-month durational requirement, he is not disabled. 20 C.F.R. § 416.924(a); *see also Murphy v. Astrue*, 496 F.3d 630, 633 (7th Cir. 2007).

In considering whether a child's impairment functionally equals a Listing, the Commissioner determines whether the claimant has an extreme limitation in one of the following domains or a marked limitation in two of the following domains: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well-being. 20 C.F.R. § 416.926a(a); 20 C.F.R. § 416.926a(b)(1); *see also Giles ex rel. Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007). In determining whether such limitations exist, the Commissioner must consider the interactive and cumulative effects of all the impairments regardless of their severity. 20 C.F.R. § 416.926a(a).

Section 405(g) of the Act gives the court "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Further, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). While the Court reviews the ALJ's decision deferentially, the Court cannot uphold an ALJ's decision if the decision "fails to mention highly pertinent evidence, . . . or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citations omitted).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

### III.  THE ALJ'S DECISION

The ALJ determined that Rice had not engaged in substantial gainful activity since January 1, 2006, the alleged onset date of disability, or since the date of her application. The ALJ then found that Rice had the following severe impairments: depression, anxiety, and obesity. Next, the ALJ concluded that Rice did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ then considered the six domains for determining whether any impairments functionally equal a listed impairment and found that Rice did not have any impairments that functionally equal a listed impairment. Therefore, the ALJ concluded that Rice was not disabled as a child because she did not have an impairment or combination of impairments that met or medically equaled any listed impairment or that functionally equaled a listed impairment.

The ALJ then continued the disability determination to consider adult disability. The ALJ concluded that Rice had not developed any new impairments since she turned 18 years of age. She continued to have severe impairments. However, the ALJ determined that her impairments and combination of impairments did not meet or medically equal any listed impairment.

The ALJ then determined that Rice has an RFC to perform light work with the following limitations:  lift and carry twenty pounds occasionally and ten pounds frequently; stand, walk, and

sit six hours in an 8-hour workday; climb stairs and ramps occasionally; never climb ropes, scaffolds, or ladders; balance, stoop, and crouch occasionally; never kneel or crawl; avoid work at unprotected heights, around dangerous moving machinery, around open flames or large bodies of water, or operating a motor vehicle; work should be simple and repetitive with no more than superficial interaction with the public, coworkers, and supervisors. (*See* Filing No. 13-1 at 31.)

The ALJ determined that Rice has no past relevant work. Finally, the ALJ determined that Rice is not disabled because there are jobs that exist in significant numbers in the national economy that Rice could perform, considering her age, education, work experience, and RFC. Therefore, the ALJ denied Rice's applications for DIB and SSI because she is not disabled.

## IV.  DISCUSSION

In her request for judicial review, Rice argues that substantial evidence does not support the ALJ's Step 3 determination that she was not disabled both before and after she was 18 years old despite her combination of impairments of depression, anxiety, oppositional defiant disorder, and bipolar disorder, as well as low global assessment of functioning scores. Additionally, Rice briefly argues that substantial evidence does not support the ALJ's Step 5 determination that she can perform some jobs in the national economy. Because the Court determines that remand is appropriate under Rice's first argument, the Court declines to address this second argument.

The Court first addresses Rice's argument that her occasional low global assessment of functioning scores ranging from 35 to 50 should have rendered her totally disabled at Step 3, and the ALJ ignored Seventh Circuit case law when he rejected, ignored, or omitted this evidence of disability. She argues that these scores are defined by psychiatry to mean that she was unable to keep a job and is thus totally disabled.

However, as the Commissioner points out, the Seventh Circuit has not held that low global assessment of functioning scores by themselves prove disability at Step 3 or generally in the disability determination under the Act. Contrary to Rice's argument, "nowhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on his GAF score." *Denton v. Astrue,* 596 F.3d 419, 425 (7th Cir. 2010). "Furthermore, the GAF scale does not have a direct correlation to the severity requirements in the Agency's mental disorders listings." *Smith v. Astrue*, 2012 U.S. Dist. LEXIS 134062, at *21 (S.D. Ind. Sept. 19, 2012) (citations and quotation marks omitted). "As has been oft-repeated by courts in this circuit, GAF scores are intended to be used to make treatment decisions, . . . not as a measure of the extent of an individual's disability." *Wimmer v. Colvin*, 2014 U.S. Dist. LEXIS 16594, at *16 (N.D. Ind. Feb. 11, 2014) (citation and quotation marks omitted). Therefore, the Court finds no error in the ALJ's decision based on his treatment of Rice's various global assessment of functioning scores.

The Court next addresses Rice's argument that the ALJ's decision should be reversed and remanded because the ALJ and the testifying medical advisor ignored important evidence of disability when considering the Step 3 determination.

In considering whether a child's impairment functionally equals a listed impairment, the Commissioner determines whether the claimant has an extreme limitation in one of the six noted domains or a marked limitation in two of the six noted domains. As the ALJ acknowledged, in making this determination, the ALJ must consider the combined effect of all medically determinable impairments, including those impairments that are not severe. Indeed, in determining whether such limitations exist, the Commissioner must consider the interactive and cumulative effects of all the impairments regardless of their severity. 20 C.F.R. § 416.926a(a).

When considering the domains of "caring for yourself" and "health and physical well-being," the ALJ determined that Rice had no limitations and less than marked limitations in these domains respectively. However, it appears that the ALJ did not even consider the evidence of self-injurious behavior, disturbances in sleeping patterns, and agitation and irritability when considering Rice's health and physical well-being and her ability to care for herself. Deferring to reports from a school teacher, assistant principal, and one portion of a psychological report, the ALJ did not address or consider the evidence that Rice cut herself when she was angry, had suicidal thoughts, picked at moles until they bled, and refused to take her medications at times. The ALJ addressed the report from Rice's mother about her asthma, colds, and sinus infections as well as a report from a doctor regarding her cardiovascular and lung health and her obesity. But the ALJ did not address the evidence of her aggression, agitation, and irritability or her difficulty sleeping.

Additionally, it appears that the ALJ did not take into account any potential impairments from Rice's bipolar disorder and oppositional defiant disorder when making the Step 3 determination. Even if these impairments were found to be not severe, the regulations require that they still be considered in combination with the other impairments at Step 3 when determining whether impairments meet, medically equal, or functionally equal a Listing. The ALJ made no mention of Rice's bipolar disorder or oppositional defiant disorder in his analysis of whether impairments were "severe" impairments. The ALJ did not say that they were not severe, and he did not explain that they were not medically determinable impairments. The decision is silent on Rice's bipolar disorder and oppositional defiant disorder.

The medical record is replete with references to and diagnoses of bipolar disorder, and the record notes that Rice was taking medication that is used to treat bipolar disorder. The Commissioner points out that a diagnosis alone is not enough to lead to a determination of

disability; the diagnosis of bipolar disorder or oppositional defiant disorder must also cause limitations in activities of daily living, social functioning, and maintaining concentration, persistence, or pace, or cause episodes of decompensation in order to be used for a disability determination. While this is true, the ALJ is still required to articulate a minimal, legitimate justification for his acceptance or rejection of specific evidence of disability. *Scheck*, 357 F.3d at 700. "The ALJ is required to take into consideration all of the evidence in the record and discuss significant evidence contrary to his ruling." *McBride v. Massanari*, 169 F. Supp. 2d 857, 862 (N.D. Ill. 2001) (citing *Godbey v. Apfel*, 238 F.3d 803, 808–09 (7th Cir. 2000)). "The ALJ cannot claim to base his decision on substantial evidence if he has ignored substantial contrary evidence." *Id*. (citing *Stein v. Sullivan*, 892 F.2d 43, 47 (7th Cir. 1989)). In this case, the ALJ failed to articulate a minimal, legitimate justification for his acceptance or rejection of specific evidence of disability. The ALJ did not explain that he was rejecting evidence of Rice's bipolar disorder or discounting it for specific reasons when determining disability. He just did not address the contrary evidence.

The Commissioner asserts that Rice is overstating the record when she argues that Dr. James M. Brooks ("Dr. Brooks") testified that he would not accept a diagnosis of bipolar disorder because there was no evidence of manic episodes, and the ALJ simply adopted Dr. Brooks's opinion instead of looking at the evidence. Rice argues that the ALJ erred in relying on Dr. Brooks's testimony because it was incomplete and erroneous.

The Commissioner explains that a review of Dr. Brooks's hearing testimony reveals that he simply recounted Dr. Leiphart's two psychological examinations and noted her twice diagnosing Rice with bipolar disorder, but at the same time, he testified that he did not see any description of actual manic episodes or symptoms in Dr. Leiphart's examination findings. The

14

Commissioner then asserts that Rice claims that the ALJ followed Dr. Brooks's lead and committed reversible error in not evaluating whether her bipolar disorder met or medically equaled Listing 12.04.  The Commissioner explains that bipolar disorder is addressed in Listings 112.04 and 12.04, and the ALJ gave a detailed analysis as to why Rice's impairments did not meet, medically equal, or functionally equal all of the requirements for these listings.

While bipolar disorder is addressed in Listings 112.04 and 12.04, and the ALJ did give a detailed analysis as to why Rice's impairments did not meet, medically equal, or functionally equal all of the requirements for these listings, the ALJ gave no indication that he considered Rice's bipolar disorder when considering her impairments and Listings 112.04 and 12.04.

Dr. Brooks testified that he reviewed Dr. Leiphart's two psychological examinations and saw her diagnosis of Rice's bipolar disorder but that he did not see any description of actual manic episodes in her examinations.  While this is true, the Commissioner failed to note that Dr. Brooks also testified that he reviewed the Gallahue medical records from the summer of 2012 and he still saw no evidence of mania even though the Gallahue records clearly discussed mania and symptoms of manic episodes.  Dr. Brooks concluded that he did not see any evidence of manic episodes.  The ALJ's only mention of manic episodes is included in his RFC discussion.  He explains that Dr. Brooks testified that, as of age nineteen, Rice "had no episodes of mania." (Filing No. 13-1 at 33.)  The ALJ gave no other consideration to mania or bipolar disorder.  He simply referred to Dr. Brooks's opinion concerning Rice's condition at age nineteen.  Contrary to this opinion, Gallahue's records for Rice at age nineteen indicate symptoms of mania and a diagnosis of bipolar disorder.  However, the ALJ never discussed this evidence or considered it in his Step 3 analysis or RFC determination.

The ALJ does not need to "evaluate in writing every piece of testimony and evidence submitted," *Carlson*, 999 F.2d at 181, but the "decision must be based upon consideration of all the relevant evidence." *Herron*, 19 F.3d at 333.  The ALJ is required to articulate a minimal, legitimate justification for his acceptance or rejection of specific evidence of disability.  *Scheck*, 357 F.3d at 700.  "The ALJ is required to take into consideration all of the evidence in the record and discuss significant evidence contrary to his ruling." *McBride*, 169 F. Supp. 2d at 862.  A review of the record and the ALJ's decision reveals that the ALJ did not address the evidence regarding Rice's bipolar disorder and the symptoms of that disorder.  Without any discussion of the bipolar disorder in the ALJ's decision, the Court can only guess whether the ALJ actually considered the evidence and gave it lesser weight when determining that Rice was not disabled.  Because of this void in the ALJ's decision, remand is warranted for consideration of Rice's impairments and combination of impairments, including her diagnosed bipolar disorder.

## V.   CONCLUSION

For the reasons set forth above, the final decision of the Commissioner is **REMANDED** for further consideration for further proceedings as authorized by the fourth sentence of 42 U.S.C. § 405(g).

**SO ORDERED.**

Date: 3/10/2016

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Patrick Harold Mulvany
patrick@mulvanylaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov